IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL ANTONIO HARDY, # 310-979   *

  Plaintiff   *

   v.   *   Civil Action No. ELH-13-2417

DAYENA M. CORCORAN   *

  Defendant   *

******

**MEMORANDUM**

Michael Antonio Hardy, the self-represented plaintiff, filed suit against Dayena M. Corcoran, Warden of the Maryland Correctional Institution, Jessup ("MCI-J"), pursuant to 42 U.S.C. § 1983. He complains that the Warden was deliberately indifferent to his medical care. Corcoran has filed a motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 9, "Motion"), to which Hardy has filed an opposition (ECF No. 14) and Corcoran has replied. (ECF No. 20).[1] The matter is fully briefed and no hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, I will grant the Motion.

---

[1] On March 25, 2014, Hardy filed a motion for appointment of counsel. ECF 21. There is no constitutional right to appointment of counsel in civil cases. A district court judge has discretion to appoint counsel if an indigent plaintiff presents exceptional circumstances. *See* 28 U.S.C. §1915(e) (1); *see also Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1984). "[A] plaintiff must present "exceptional circumstances." *Harris v. Salley*, 339 Fed. Appx. 281, 284 (4th Cir. 2009) (quoting *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Whether such circumstances exist depends on 1) the type and complexity of the case, and 2) the abilities of the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v U.S. District Court*, 490 U.S. 296, 298 (1989); *Gordon v. Leake*, 574 F.2d 1147, 1153 (4th Cir. 1978). Appointment of counsel is unwarranted, as no exceptional circumstances are alleged.

**FACTUAL BACKGROUND**

Hardy claims that on July 30, 2013, while housed at MCI-J, he injured his left pinky finger "climbing down off the top bunk bed in the morning. . . ." Complaint, ECF No. 1, Part III. He asserts: "The bunk-beds in this institution do not have anything fixed to them that will allow me to climb up and down freely without putting me in danger." *Id*. Hardy adds that chairs are not allowed in prisoner cells and the "mattress lays on top of a mesh steel." *Id*. As a result, Hardy's "finger got caught in the semi-oval shaped holes," and he "lost [his] footing climbing down." *Id*.

Hardy further alleges that on July 31, 2013, he was seen by a medical provider who recommended ice twice a day, bandaging the finger, an x-ray, and Motrin 600 mg. ECF No. 1 at 3-4. He complains his finger was not bandaged until August 1, 2013, he did not have the x-ray until August 14, 2013, and he never received ice. *Id*. at 4.[2] Additionally, he maintains that he was instructed by "a male nurse" to stick his hand out through the meal serving slot of his cell for bandaging. *Id*.

According to Hardy, his finger is swollen, disfigured, and he cannot straighten it. ECF No. 1 at 4. In his view, the Warden is "fully responsible" because she is in charge of operations at MCI-J. Further, he claims that defendant "creates an unsafe environment." ECF No. 1 at 4, 8. Hardy seeks $25,000 in compensatory damages, $5,000 in punitive damages, injunctive relief requiring that he be examined by a "Physician-Hand Finger Specialist" and "to have a step ladder affixed to [his] Bunk-Bed."[3] ECF No. 1, Part IV.

---

[2] Hardy does not name any medical providers as defendants.

[3] Hardy is presently housed at the Maryland Correctional Training Center in Hagerstown, Maryland. Hardy's transfer from the facility where the incident occurred would appear to render moot his request for a mounted step ladder in his cell. *See Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (stating that, "as a general rule, a prisoner's transfer or release from a

Warden Corcoran has moved to dismiss or, alternatively, for summary judgment, on the grounds of lack of administrative exhaustion, failure to state a claim for which relief may be granted, and qualified immunity. ECF No. 9. In support, Corcoran has submitted numerous exhibits, discussed below.

On July 31, 2013, Hardy was seen by Wondaye Deressa, RNP, for an injury to his left pinky finger. ECF 9-2 at 4 (Exhibit 1, Decl. of Barbara Howard, Litigation Coordinator, with numerous attachments, including medical records). Hardy reported that his left pinky finger was caught on wires while he was trying to climb up to his bunk the previous morning. *Id*. The treatment plan was to "buddy tape" the finger, provide ice for swelling, x-ray the finger, and follow-up afterward. *Id*.

On August 1, 2013, an order for ice was generated by the medical department. ECF 9-2 (Exhibit 1, at ¶ 3). After such an order is generated, the inmate is provided with a pass, which allows him to come to the medical department to obtain ice as needed. *Id*. at ¶4.

On August 6, 2013, corrections personnel received Hardy's Administrative Remedy Procedure request ("ARP"), MCIJ-0547-13, dated August 1, 2013, complaining of a dislocated finger and that his medical orders of July 31, 2013, were not being followed. ECF No. 1 at 10; ECF No. 9-3 (Exhibit 2, Decl. of Sergeant Selma Fulgham, MCI-J Administrative Remedy Coordinator, with attachments). Prison records show that during investigation of the ARP on August 14, 2013, Hardy told Officer Chase that "A. Bah, RNC came to his housing unit" on July 31, 2013, and "buddy splinted [Hardy's] 5th digit to the 4th digit as written in the RNP plan of care dated 7/31/13." ECF No. 9-2 (Exhibit 1 at 10). Hardy stated that "he (AB) didn't wrap it

---

particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")

3

right and I took it off," reporting that he placed no further sick calls to have the issue addressed. *Id. See also* ECF No. 9-3 (Exhibit 2 at 4).

On August 15, 2013, Hardy's left hand was x-rayed. The results revealed a small avulsion fracture at the base of distal phalanx with flexion deformity at the distal interphalangeal joint. Exhibit 1 at 5. Hardy received an orthopedic evaluation on August 27, 2013, and was diagnosed with "mallet finger (left 5th) secondary to extensor tendon rupture & ? tiny avulsion fracture. Plan is mallet finger splint (6-8 wks)." *Id*. at 6 and 8. Hardy was scheduled to return to the clinic in four weeks and it was noted that he might require surgery if the splinting failed. *Id*.

Warden Corcoran responded to the ARP on September 5, 2013, advising that the matter had been investigated and the ARP was dismissed. Exhibit 2 at 4. The response stated, *id*.:

> You stated that the doctors' orders were not followed. When you were interviewed on 8/14/13 you told the nurse that the charge nurse wrapped you[r] fingers but you took it off. You also claimed that you did not receive any medication and the nurse interviewed provided you with Motrin before you left the dispensary on 7/31 and additional Motrin was ordered. It was ordered on the 8/14 per your request. You also reported to the nurse that you did not submit any more sick calls after the initial injury. You were seen on the 31st and submitted an ARP on the 1st leaving minimal time to carry out any orders that were generated. Since that date everything ordered had been completed including generation of a consultation and the appointment is pending. If you experience additional medical issues, please follow the facility sick call process.

Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO"), attests that Hardy filed one grievance with the IGO since July 30, 2013, IGO No. 20131513, filed as an "appeal" from the disposition of ARP-MCIJ-0547-13, in which inmate Hardy complained that medical staff had failed to follow up on medical orders for treatment of his left pinky finger injured on July 30, 2013. ECF No. 9-4 (Exhibit 3, Decl. of Scott S. Oakley, at ¶ 2). The grievance was administratively dismissed by the IGO on October 22, 2013, on the grounds that the grievance against medical staff was beyond the jurisdiction of the IGO, which is limited to

complaints against officials and employees of the DOC and Patuxent Institution. *Id.* There is no indication in the file that Hardy instituted a Maryland circuit court proceeding for judicial review of the final administrative decision. *Id.*

In his opposition, Hardy disputes the Warden's contentions, and reiterates that the Warden was "deliberately indifferent" to Hardy's medical care. ECF No. 14 at 2. He posits, *inter alia,* that Inmate Grievance Director Scott Oakley's Declaration fails to show that he appealed his ARP to "the Commissioner of Correction and did not receive a response." *Id.* Hardy also contends that he never received ice for his finger and there is no record that an ice pass was issued. He explains that because he was in segregation housing between July 28 and September 25, 2013, he could not leave his cell on his own to obtain ice. *Id.* Hardy states he was not escorted to the medical unit for ice and none was brought to him. Additionally, Hardy characterizes as "hearsay" defendant's assertion that he told the investigating officer that he removed his bandage. *Id.*

## STANDARD OF REVIEW

Defendant's motion is captioned as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp.2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to

5

present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998).[4] Here, Hardy was informed of his right to respond to the motion and submit affidavits, declarations, and other documentary evidence in support. ECF 10.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed.R.Civ.P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, but fails to file a Rule 56(d) affidavit, he does so at his peril, because generally "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment. To do so will

7

facilitate disposition of the case.

Summary judgment is governed by Fed.R.Civ.P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.,* 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed.R.Civ.P. 56(e)). However, the court must "view the evidence in the light most favorable to .... the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See*

*Erickson v. Pardus*, 551 U.S. 89 94 (2007). Nevertheless, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp.*, 477 U.S. at 323–24).

## DISCUSSION

Defendant asserts that Hardy has failed to properly exhaust administrative remedies, failed to state a cause of action upon which relied can be granted, and that she is entitled to qualified immunity.

### A. Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. It provides "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory and unexhausted claims may not be brought in court. *See Jones v. Bock*, 549 U.S. 199 (2007).

"[F]ailure to exhaust is an affirmative defense under the PLRA ...." *Jones*, 549 U.S. at 216. An affirmative defense is the "'defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all allegations in the complaint are true.'"

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (emphasis added) (internal citations and some internal quotation marks omitted). The defendant bears the burden of pleading and proof as to an affirmative defense. *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 90 (2008) ("Ordinarily, it is incumbent on the defendant to plead and prove [an affirmative] defense."); *Moore*, 517 F.3d at 725 (citing *Jones, supra*, 549 U.S. 199); *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir.2007).

Maryland prisoners have an "available" administrative grievance procedure within the meaning of 42 U.S.C. § 1997e(a), for the redress of a "grievance against an official or employee of the Division of Correction." Md. Code (2008 Repl.Vol., 2012 Supp.), § 10–206 of the Correctional Services Article ("C.S."). Regulations promulgated by Department of Public Safety and Correctional Services ("DPSCS") concerning the grievance procedure define a "grievance" to include a "complaint of any individual in the custody of the [Division of Correction] ... against any officials or employees of the [Division of Correction] ... arising from the circumstances of custody or confinement." Code of Maryland Regulations ("COMAR") 12.07.01.01.B(8). The Maryland Court of Appeals has indicated that the administrative grievance procedure applies to a wide variety of matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Massey v. Galley*, 392 Md. 634, 651, 898 A.2d 951, 960 (2006) (citation omitted). A suit "brought with respect to prison conditions," 442 U.S.C. § 1997e(a), includes claims of excessive force. *Porter*, 534 U.S. at 532.

An inmate in Maryland must first file his grievance pursuant to an administrative remedy procedure ("ARP") that is maintained by the institution in which he is confined. *See* C.S. § 10–206(b); *see also* COMAR 12.07.01.02.D. Within thirty days after the completion of the ARP process, the inmate may request further review by submitting a complaint to the statewide Inmate Grievance Office ("IGO"). *See* COMAR 12.07.01.05. B.

Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10–207; COMAR 12.07.01.06. If the IGO determines that the complaint is not "wholly lacking in merit on its face," C.S. § 10–208(c), it refers the matter to the Maryland Office of Administrative Hearings ("OAH"), for a hearing to be conducted by an administrative law judge ("ALJ"). *See* C.S. § 10–208; COMAR 12.07.01.07–.08.

A decision of an ALJ that dismisses an inmate's grievance in its entirety is considered a final agency determination. *See* C.S. § 10–209(b)(1). On the other hand, an ALJ's decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who is entitled to adopt or reject the ALJ's recommendation, in whole or in part. *See* C.S. § 10–209(b)(2), (c). A prisoner may pursue judicial review of the final agency determination in the state courts of Maryland. *See* C.S. § 10-210(b)(1).

Hardy has not filed an ARP alleging any facts about defendant's involvement relating to the subject matter of this claim because the ARP did not name or allege any facts involving Warden Corcoran. Instead, Hardy complained solely about the treatment he received from medical personnel. Thus, it is irrelevant whether Hardy's "appeal" was received by the Commissioner of Correction because the ARP did not name Warden Corcoran or allege any facts about her. Because Hardy failed to pursue properly his claim against the Warden to all levels of review, Hardy cannot show exhaustion of administrative remedies as to claims against the Warden.

Even assuming, *arguendo,* that Hardy satisfied the exhaustion requirement, summary judgment in favor of defendant is nonetheless appropriate.

### B. Eighth Amendment Claim

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal

constitutional right or a right secured by federal law. *See Baker v. McCollan*, 473 U.S. 137 (1979). Plaintiff claims violations of his rights under the Eighth Amendment, relating to his contention of inadequate medical care.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S.294, 297 (1991)). In order to state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the actions of the defendant or the failure to act amounted to deliberate indifference to a serious medical need. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *Farmer v. Brennan*, 511 U.S. at 837.

As noted above, objectively, the medical condition at issue must be serious. A "serious medical need" refers to a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). The treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires

"subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839.

Deliberate indifference to a serious medical need "describes a state of mind more blameworthy than negligence." *Id.* at 835. It requires proof that the prison official knew of or was aware of the inmate's need for medical attention and disregarded an excessive risk to the inmate's health or safety. *Id.* at 837. Put another way, for liability to attach based on a violation of the Eighth Amendment, the law "requires consciousness of a risk. . . ." *Id.* at 840. So, deliberate indifference requires that a defendant have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). As the Fourth Circuit has explained: "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

In *Farmer,* the Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. The *Farmer* Court added that it is enough for an Eighth Amendment claimant to show that "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997).

If the requisite knowledge is established, a prison official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Under the Eighth Amendment, "[a] prison official's duty . . . is to ensure "'reasonable

safety' . . ." (citation omitted). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

"[A]ny negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference[.]" *Id.* at 166. Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Moreover, inmates do not have a constitutional right to the treatment of their choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977) (emphasis added). "Disagreements between an inmate and a physician" as to the "inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Estelle,* 429 U.S. at 105–06; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). And, prison officials are entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier*, 896 F.2d at 854–55 (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

Vicarious liability based on respondeat superior is generally inapplicable to § 1983

actions. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir.1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978). Liability of supervisory officials is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).

To establish a claim for supervisory liability under § 1983, the claim must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

In this case, the Warden was not the medical provider. Hardy provides no evidence that defendant was personally involved in or responsible for the matters alleged here. Nor has he alleged facts that suggest defendant is subject to supervisory liability based on the conduct of other employees implementing prison policy or the creation of corrections policy. Hardy's conclusory statements concerning defendant's administrative responsibilities are insufficient to suggest the Warden's personal involvement, so as to confer culpabality. Therefore, summary judgment in favor of defendant is appropriate.[5]

---

[5] In light of this analysis, the court need not reach defendant's qualified immunity defense.

**CONCLUSION**

When considered in the light most favorable to Hardy, he claims that he was not provided ice for his finger, he disagreed with a nurse as to how his finger should be bandaged, and he is unhappy with the quality of the medical care he received. Although it is true that several days passed between Hardy's first sick call visit for his finger and his receipt of additional Motrin, an x-ray, and a sick call follow-up, Hardy does not dispute that his concerns were addressed shortly after he submitted his ARP request. Hardy's claims do not suggest that defendant acted with deliberate indifference necessary to state an Eighth Amendment violation. Indeed, Hardy provides no evidence that defendant sought to prevent or interfere with his medical care. No genuine issue of material fact is presented and defendant is entitled to summary judgment in her favor as a matter of law.

For the foregoing reasons, summary judgment will be entered in favor of defendant by way of a separate Order.

April 1, 2014  /s/
Date  Ellen Lipton Hollander
 United States District Judge